**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **The Newark Group, Inc.** : | |
| : | |
| **Plaintiff,** : | Case No. C2 01-1247 |
| : | |
| **vs.** : | Judge Frost |
| : | |
| **James F. Sauter, et al.,** : | Magistrate Judge Abel |
| : | |
| **Defendants.** : | |

---

**PLAINTIFF, THE NEWARK GROUP, INC.'S  MOTION
FOR RECONSIDERATION OF AND OBJECTIONS TO
THE MAGISTRATE JUDGE'S ORDER OF AUGUST 26,
2003 RESPECTING PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND ATTENDANCE OF
WITNESSES FROM NON-PARTY GEORGIA-PACIFIC
CORPORATION PURSUANT TO SUBPOENA**

---

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(a) of the Federal Rules of Civil Procedure, Plaintiff, The Newark Group, Inc. ("Newark"), respectfully objects to and moves this Court for reconsideration of the Revised discovery Order entered by United States Magistrate Judge Abel on September 4, 2003 ("Revised Order") (attached as Exhibit A).  The Revised Order applies to non-party witness Georgia-Pacific Corporation and perpetuates the same restriction on Newark's discovery as the Magistrate Judge's previous orders directed to the Sonoco Defendants, even though the restrictions now severely hamstring Newark's ability to respond to the Sonoco Defendants' Motion for Summary Judgment.  The discovery restriction at issue is already the subject of Newark's pending Motion for Reconsideration of the Magistrate Judge's July 2, 2003 Discovery Order and also Newark's pending Motion Pursuant to Fed.R.Civ.P. 56(f).  The

continued application of the Magistrate Judge's discovery restrictions will seriously impair Newark's ability to respond to Defendants' Motion For Summary Judgment and, in that light especially, are unjustifiable and constitute clear error.  Newark respectfully requests that the discovery restriction imposed by the Revised Order be removed, so that Newark can adequately respond to Defendants' summary judgment motion and prepare for trial.

        Respectfully submitted,

| | |
|---|---|
| Of Counsel: | s/ John R. Gall_____ |
| | John R. Gall  (0011813) |
| David M. Ascher, Esq. | Philomena M. Dane  (0044064) |
| Vice President, General Counsel | Aneca Lasley (0072366) |
|   and Secretary | SQUIRE, SANDERS & DEMPSEY L.L.P. |
| The Newark Group, Inc. | 1300 Huntington Center |
| 20 Jackson Drive | 41 South High Street |
| Cranford, New Jersey  07016 | Columbus, Ohio  43215-6197 |
| (908) 276-4000, ext. 288 | (614) 365-2700 |
| (908) 276-2888 (facsimile) | (614) 365-2499 (facsimile) |
| | |
| | Attorneys for Plaintiff |
| | The Newark Group, Inc. |

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Newark seeks relief from the Revised Order in two respects.  First, the Revised Order limits the document production from non-party witness Georgia-Pacific Corporation ("Georgia-Pacific") in the same prejudicial manner as the Magistrate Judge's July 2, 2003 Discovery Conference Order (the "July 2 Order")[1] limited production from the Sonoco Defendants.   Even though Defendants deny using any trade secret or confidential information stolen from Newark in the Georgia-Pacific bid process at issue, the Revised Order excuses Georgia-Pacific from producing communications between it and the Sonoco Defendants respecting that bid process unless those communications mention Newark by name.  Such restriction is illogical and unjustifiable.  It excludes communications that would reflect Defendants' use of trade secret and confidential business information stolen from Newark for the purpose of the Georgia-Pacific bid, but which don't actually mention Newark by name.

Second, the Revised Order authorizes only a single Georgia-Pacific deposition.  Such limitation unnecessarily but significantly circumscribes Newark's ability to conduct the range of deposition discovery which a fair document production from Georgia-Pacific and the Sonoco Defendants may necessitate.  The one person authorized to be deposed, Philip Jones, is certainly the specific Georgia-Pacific person upon whose affidavit the Sonoco Defendants rely in their summary judgment papers. Mr. Jones, however, may not have the breadth of knowledge himself to answer all of the questions that may be appropriate concerning the communications between Georgia-Pacific and the Sonoco Defendants.  He simply wasn't a participant in many of them.

---

[1] Newark's Motion For Reconsideration Of And Objections To The July 2 Order was filed on July 14, 2002 and is pending before the Court.

3

In both respects, the Revised Order erroneously precludes Newark from obtaining discovery from Georgia-Pacific that would reveal the true extent to which the Sonoco Defendants have "used" the trade secret and confidential information stolen from Newark and the extent to which they disparaged Newark in the course of the Georgia-Pacific bid process.

**II.     ARGUMENT**

Where, as here, a party timely files objections to a Magistrate Judge's pretrial order, a District Judge may modify or set aside any portion of it that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).  Although the standard of review is narrow, the law is well settled that a District Judge has substantial leeway to modify a Magistrate Judge's pre-trial discovery order where such pre-trial order is contrary to law or a modification is necessary to prevent manifest injustice. 12 Wright and Miller, Federal Practice and Procedure, Civil 2nd Section 3069 (a district judge is not "hamstrung by the clearly erroneous standard."); Gorman v. Polar Electro, Inc., 137 F. Supp. 2d 223 (E.D.N.Y. 2001); Bublitz v. E.I. DuPont de Nemours & Co., 196 F.R.D. 545 (S.D. Iowa 2000); Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761 (D.N.J. 2000). This case presents a situation in which a modification of the Magistrate Judge's pre-trial order is not only appropriate, but absolutely necessary.  Unless the discovery from which the Magistrate Judge has excluded Newark is allowed, Newark will not be able either to respond fully to Defendants' Motion for Summary Judgment or make a complete evidentiary presentation concerning its claims at trial.

    **A.     The Revised Order Does Not Allow Newark Access to Georgia-Pacific Documents that are Critical to Newark's Claims And Its Ability To Respond To The Sonoco Defendants' Motion For Summary Judgment**

4

Newark has previously described in detail its efforts to date to obtain relevant discovery from the Sonoco Defendants and from Georgia Pacific respecting the claims set forth in its Second Amended Complaint. [2] Those efforts will only be summarized here.

In this case, Newark alleges that the Sonoco Defendants stole trade secret and confidential information from Newark. The information was stolen, in part, for the purpose of gaining the upper hand in a bid process in which Newark and the Sonoco Defendants were competing for Georgia-Pacific's West Coast tissue and towel core stock business. Newark also alleges that the Sonoco Defendants disparaged Newark to Georgia-Pacific during that bid process.

With regard to those claims, Newark has persistently sought relevant discovery from the Sonoco Defendants since October 2002. In particular, Newark has sought those portions of the Sonoco Defendants' Georgia-Pacific bid process file that covered Georgia-Pacific's West Coast tissue and towel core stock business. Those portions of the file would reflect the extent to which the Sonoco Defendants <u>internally</u> used the trade secret and confidential information stolen from Newark to develop and implement a strategy for winning the Georgia-Pacific tissue and towel core stock bid. It would also include communications between Georgia-Pacific and the Sonoco Defendants respecting the tissue and towel core stock bid. Such communications would evidence any direct or indirect <u>external</u> use of the stolen trade secret and confidential information by the Sonoco Defendants, and any actual disparagement of Newark to Georgia-Pacific. In both respects, the information sought was clearly relevant to Newark's claims.

The Sonoco Defendants strongly opposed production of any portion of their Georgia-Pacific bid process file, even though an agreed protective order was in place which would have

---

[2] See Motion For Reconsideration Of And Objections To The Magistrate Judge's Discovery Order Of July 2, 2003 (filed July 14, 2003); Newark's Motion To Compel Production Of Documents and Attendance Of Witnesses From Non-Party Georgia-Pacific Corporation Pursuant To Subpoena (also filed July 14, 2003); and Newark's Motion Pursuant To Fed.R. Civ. P. 56(f) (filed August 7, 2003).

completely protected the confidentiality of the information in it.[3] On March 3, 2002, the United States Magistrate Judge declined to order that file produced. Instead, he required the Sonoco Defendants to produce from their Georgia-Pacific bid process file only the following:

> . . . documents . . . that reflect or relate to [the Sonoco Defendants'] communications to Georgia-Pacific about Newark's ability and/or willingness to perform the West Coast [core stock] business . . . .

March 3, 2003 Hearing Transcript at 4, 40-43 ("March 3 Order"). Such a severe limitation was clearly unjustifiable under the liberal discovery scope which Fed.R.Civ.P. 26 contemplates. It required production only of "communications to Georgia-Pacific" that referenced Newark by name and dealt with Newark's "ability or willingness to perform" Georgia-Pacific's West Coast core stock business. Most importantly, Defendants were excused entirely from producing any internal documents, including even internal memoranda or e-mails that actually or inferentially reflected use of information which was stolen from Newark. The prejudicial impact of that unjustifiable restriction is best demonstrated by documents that the Sonoco Defendants did not produce under its authority. After the discovery cut-off had passed and the summary judgment briefing was closed, they belatedly produced to Newark three stunning documents from their internal files which do inferentially reflect their use of stolen information during the Georgia-Pacific bid process. See, infra at 11-12. In the cover letter which accompanied the documents, Defendants claimed that the Court's prior discovery orders "[did] not require this production." Id.

From March 3, 2003 to July 2, 2003, the Magistrate Judge refused to expand that discovery limitation, even in the face of strong evidence suggesting that the Sonoco Defendants did take information stolen from Newark into account in competing with Newark for Georgia-

---

[3] See Amended Agreed Protective Order of February 13, 2002.

Pacific's west coast tissue and towel core stock business and evidence that the Sonoco Defendants were not fairly interpreting even the limited discovery authorization which the March 3, 2003 Order represented.[4]

In the meantime, because of the Sonoco Defendants' resistance to meaningful discovery regarding its Georgia-Pacific bid process claims, Newark issued a subpoena <u>duces tecum</u> and <u>ad testificandum</u> to Georgia-Pacific on April 2, 2003.[5] The subpoena asked Georgia-Pacific, among other things, to produce its communications with the Sonoco Defendants respecting Newark or the West Coast portion of its tissue and towel core stock business that it put out for bid, and to provide one or more representatives for deposition respecting related subjects.[6] Georgia-Pacific and Newark subsequently, but unsuccessfully, attempted to negotiate agreed-upon discovery. Newark thereafter filed a Motion to Compel discovery from Georgia-Pacific in the Northern District of Georgia, Atlanta Division, on June 12, 2003. On June 27, 2003 United States District Judge Carnes in Atlanta entered an Order remitting the matter to this Court for disposition.[7]

---

[4] See, e.g., Newark's June 2, 2003 Motion for Reconsideration Of And Objections To Magistrate Judge's Discovery Order Of May 23, 2003 and Newark's June 13, 2003 Motion For Additional Discovery (both filed under seal herein).

[5] See Tab A to Appendix To Newark's Motion To Compel Production Of Documents And Attendance Of Witnesses Pursuant to Subpoena (filed herein on July 14, 2003).

[6] The documents sought included the following:
    1. Documents comprising, reflecting or relating to communications between [the Sonoco Defendants] and Georgia-Pacific concerning the West Coast tissue and towel core stock portion of Georgia-Pacific's Request For Proposal.
    2. Documents comprising, reflecting or relating to communications between [the Sonoco Defendants] and Georgia-Pacific in 2001 and 2002 concerning Newark's capacity or ability to supply core stock to any of Georgia-Pacific's facilities.
    3. Documents comprising, reflecting or relating to communications between [the Sonoco Defendants] and Georgia-Pacific in 2001 or 2002 which refer or relate to Newark.
  The deposition subject matters specified included the following:
    1. Communications with [the Sonoco Defendants] and Georgia-Pacific respecting the Request For Proposal which refer or relate to Newark.
    2. Communications with [the Sonoco Defendants] and Georgia-Pacific respecting tissue and towel core stock which refer or relate to Newark.
    3. Communications with [the Sonoco Defendants] and Georgia-Pacific respecting Newark's ability or capacity to supply core stock to any of Georgia-Pacific's facilities.

[7] See Tab G to Appendix To Newark's Motion To Compel Production Of Documents And Attendance Of Witnesses Pursuant to Subpoena (filed herein on July 14, 2003).

Thereafter, on July 14, 2003, Newark moved this Court to compel the production of those documents and the attendance of witnesses from Georgia-Pacific for deposition.

As with the corresponding discovery to the Sonoco Defendants, the requests to Georgia-Pacific sought relevant information by any objective measure.  If the Sonoco Defendants "disparaged" Newark to Georgia-Pacific, it would be reflected in the communications back and forth between Defendants and Georgia-Pacific.  Likewise, if the Sonoco Defendants used trade secret or confidential information that they wrongfully stole from Newark to formulate or refine their own strategy respecting the tissue and towel core stock portion of the Georgia-Pacific bid process, such use would be reflected in the text and structure of their communications with Georgia-Pacific.  Moreover, Georgia-Pacific was not itself in a position to analyze and evaluate any of the communications from the Sonoco Defendants for Newark's trade secret or confidential information.  Georgia-Pacific was and is not aware of the trade secret and confidential information that the Sonoco Defendants stole in this case because all of such information is being maintained under seal in order to protect its continuing value to Newark.

The importance of the requested discovery was dramatically magnified by the Sonoco Defendants' intervening July 11, 2003 Motion for Summary Judgment.  In that Motion, the Sonoco Defendants not only contended that they never "used" any of the stolen information during the Georgia-Pacific bid process, they also relied extensively upon the affidavit of a Georgia-Pacific employee, Philip Jones, as support for their contention that summary judgment should be granted to them on Newark's Georgia-Pacific bid process claims:

> Georgia-Pacific . . . has testified, through its employee, Philip Jones, that Sonoco never "made any disparaging or negative statement concerning [Newark] at any time in the Bid Process."
> (First Jones affidavit at paragraph 5)

and further that

8

> Georgia-Pacific's decision [to award the west coast tissue and towel core stock business to Sonoco Products] . . . was premised largely on the fact that the transition risk cost – the cost of changing suppliers – favored Sonoco. (First Jones affidavit at paragraphs 11-12) Motion for Summary Judgment at 48-50.

Georgia-Pacific nevertheless continued to decline production of any of its bid documents or to provide any witnesses for deposition.

Newark's July 14, 2001 Motion to Compel discovery from Georgia-Pacific in this Court was referred to United States Magistrate Judge Abel. On September 4, 2003, the Magistrate Judge issued his Revised Order disposing of it. Even in the face of the Sonoco Defendants' Motion for Summary Judgment, the Court again refused to allow Newark the discovery it needed. Instead, the Magistrate Judge required Georgia-Pacific to produce only those documents "that reflect or relate to [the Sonoco Defendants'] communications to Georgia-Pacific about Newark's ability and/or willingness to perform the west coast tissue and towel core stock business . . ." or "any formula or method of Newark's for producing lightweight tissue and towel core stock." Revised Order at 3.[8]

As noted by the Magistrate Judge, the language of the Revised Order tracks that which he used in his "prior discovery orders" concerning the Sonoco Defendants. Unlike the situation when those earlier Orders were issued, however, the Sonoco Defendants had a summary judgment motion pending after July 11, 2003 which made production of both Georgia-Pacific and the Sonoco Defendants' entire tissue and towel core stock bid file absolutely essential. In that context, if not before, the imposed restriction is clearly erroneous. Despite the fact that the

---

[8] The reference to Newark's core stock formula is inexplicable. Newark never expressly asked Georgia-Pacific for communications which might involve its tissue and towel core stock formula. Newark's request would have covered that subject only to the extent that its more general request for communications with the Sonoco Defendants concerning Georgia-Pacific's tissue and towel core stock business would have included any mention of Newark's formula.

9

Sonoco Defendants claim entitlement to summary judgment based upon the contention that they did not use trade secret and confidential information stolen from Newark in any context, the Revised Order allows Georgia-Pacific to withhold documents that reflect Defendants' use of stolen information, unless such documents also specifically refer to Newark by name.  The order also allows Georgia-Pacific to withhold documents that reflect Defendants' disparagement of Newark unless such documents are consistent with Georgia-Pacific's interpretation of "Newark's ability and/or willingness to perform . . . ."   No such limitation is warranted now, however, given the broad and conclusory assertions in Defendants' summary judgment paperwork to which Newark must respond.

Since the Defendants claim that they did not use any of the information they took from Newark and did not disparage Newark in any way, Newark should be allowed an adequate range of discovery from Georgia-Pacific to test those assertions.  Since Georgia-Pacific is not aware of the content of the stolen information, that discovery must include all of the documents in Georgia-Pacific's possession that reflect or relate to communications with the Sonoco Defendants respecting the West Coast portion of the tissue and towel core stock business that it put out for bid.

The Magistrate Judge also prematurely limited Newark's ability to conduct deposition discovery to a single Georgia-Pacific deponent, Philip Jones.  Mr. Jones's deposition is certainly warranted, in view of the fact that the Sonoco Defendants are using an affidavit which he provided in another context to support their application for summary judgment.[9]  However, his may not be the only deposition that is warranted.  The evidence of record to date demonstrates

---

[9] The Revised Order does not require Georgia-Pacific to produce all available documents relating to the subject matter of Mr. Jones' affidavit testimony, including even the specific documents that he reviewed in preparing his affidavit.

that several others within Georgia-Pacific were involved in the tissue and towel core stock bid or were present at important meetings with the Sonoco Defendants during the bid process at which Georgia-Pacific's core stock business were discussed.  Indeed, the two meetings which the Sonoco Defendants had with Georgia-Pacific executives in the timeframe when Georgia-Pacific apparently changed its mind about who would get the core stock business, did not involve Philip Jones at all.  Depending on what is revealed by further discovery, including the production of all Georgia-Pacific documents which refer or relate to communications with the Sonoco Defendants about the tissue and towel core stock business which it put out for bid, Newark may need to, and should be permitted to, depose additional Georgia-Pacific witnesses.

### C.  The Recent Production Of Three Formerly Undisclosed Documents By The Sonoco Defendants Supports Newark's Entitlement To Removal Of The Unfair Restriction On Discovery Which The Revised Order Imposed

On August 13, 2003, after both Newark's Memorandum In Opposition To Defendants' Motion For Summary Judgment and its Motion Pursuant To Fed.R.Civ. P. 56(f)  were on file, and after the briefing on Newark's Motion To Compel Georgia-Pacific was closed, and long after the discovery cut-off date in this case, Newark received from the Sonoco Defendants the astounding letter and attachments which are Exhibit A to its Supplemental Brief of August 22, 2003.  The letter, from the Sonoco Defendants' counsel in this action, encloses three documents from  the Sonoco Defendants' Georgia-Pacific bid process file.  These documents were apparently among the materials that Defendants' employees Sandy McArthur and Rolfe Olsen reviewed before submitting their respective affidavits in support of Defendants' summary judgment motion.  The three new documents consist of an agenda for an internal, pre-bid assessment meeting ("Georgia-Pacific strategy review meeting") on November 16, 2001, presentation materials actually used at the meeting, and a subsequent recap of that meeting.  The

small look into the previously undisclosed bid process files of the Sonoco Defendants which those three documents represent is startling. From the three newly produced documents alone, a jury would be entitled to draw the inference that the Sonoco Defendants "used" trade secret or confidential information wrongfully obtained from Newark in making their pre-bid assessment of the Georgia-Pacific bid opportunity and in planning a strategy for their response to that opportunity.[10]

Because those documents were labeled "Attorneys Eyes Only" by the Sonoco Defendants, their exact contents cannot be revealed to Georgia-Pacific or displayed on the public record in this unsealed Motion. The significance of their contents, however, is discussed fully in sealed documents now before the Court. See Newark's Supplemental Brief of August 22, 2003 and its Reply Brief in Support of its Motion Pursuant to Fed.R.Civ.P. 56(f) of September 8, 2003. It must suffice here to say that the three new documents exemplify better than almost anything else could why Newark should have relief from the discovery straight-jacket which the Revised Order represents. Newark must have from Georgia-Pacific all of the documents which record or relate to communications between Defendants and Georgia-Pacific respecting its West Coast tissue and towel core stock business, and be able to conduct appropriate depositions based upon the review, in order to make a complete response to Defendants' summary judgment motion and to prepare for trial on the allegations of the Second Amended Complaint. In that regard,

---

[10] Courts routinely acknowledge that defendants in trade secrets cases must resort to the examination of circumstantial evidence to prove their claims. See Greenberg v. Croydon Plastics Co., 378 F. Supp 806, 814 (E.D. Pa. 1974)(the court notes that in trade secret cases defendants and defendant's witnesses frequently deny everything, therefore, claims can rarely be proven by direct evidence and plaintiffs must resort to the use of circumstantial evidence); Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, 35 F.3d 1226, 1239-40 (8th Cir. 1994)(the court explains "an inference of misappropriation from limited facts is especially warranted in situations such as this where the secret itself is so unique that any form of duplication would probably be improper."); LinkCo, Inc. v. Fujitsu Ltd., 2002 U.S. Dist. LEXIS 2543 (S.D.N.Y. Feb. 15, 2002)(summary judgment denied where plaintiff established circumstantial evidence of use)(attached as Exhibit B to Newark's August 7, 2003 Motion Pursuant to Fed.R.Civ. P. 56(f)); and RKI, Inc. v. Grimes, 200 F. Supp. 2d 916, 923 (N.D. Ill. 2002) (because direct evidence of misappropriation is typically not available, a plaintiff can rely on circumstantial evidence to prove misappropriation).

unequivocally requiring both Georgia-Pacific <u>and</u> the Sonoco Defendants to make the requested discovery will provide some surety of fair compliance by the Sonoco Defendants which has obviously been lacking to date.

### III. CONCLUSION

The limitations imposed on Newark's discovery in this proceeding, in general, and by the Revised Order, in particular, are extraordinary. In the context of the Sonoco Defendants' Motion For Summary Judgment, they are also an abuse of discretion by the Magistrate Judge and clearly erroneous. The discovery requested from Georgia-Pacific is relevant by any standard and Georgia-Pacific has never made any showing that it would be burdensome or unduly expensive for it to comply. Newark believes that the documents at issue in Georgia-Pacific's files are few in number. In addition, a comprehensive Protective Order already exists, the provisions of which are more than adequate to protect any information that Georgia-Pacific desires to maintain in confidence.

For all the foregoing reasons, Newark respectfully requests that Georgia-Pacific be ordered to produce the following subpoenaed documents:

    1.    Documents comprising, reflecting or relating to communications between Sonoco Products or Sonoco-U.S. Mills and Georgia-Pacific concerning the West Coast tissue and towel core stock portion of Georgia-Pacific's Request For Proposal; and

    2.    Documents comprising, reflecting or relating to communications between Sonoco Products or Sonoco-U.S. Mills and Georgia-Pacific in 2001 and 2002 concerning Newark's capacity or ability to supply core stock to any of Georgia-Pacific's facilities; and

    3.    Documents comprising, reflecting or relating to communications between Sonoco Products or Sonoco-U.S. Mills and Georgia-Pacific in 2001 or 2002 which refer or relate to Newark

and make designated representatives, including but not limited to Mr. Jones, available for deposition respecting the following subpoenaed subject matters:

    1.    Communications with Sonoco Products or Sonoco-U.S. Mills respecting the Request For Proposal which refer or relate to Newark; and

    2.    Communications with Sonoco Products or Sonoco-U.S. Mills respecting tissue and towel core stock which refer or relate to Newark; and

    3.    Communications with Sonoco Products or Sonoco-U.S. Mills respecting Newark's ability or capacity to supply core stock to any of Georgia-Pacific's facilities.

Respectfully submitted,

s/ John R. Gall

| | |
|---|---|
| Of Counsel: | John R. Gall, Trial Attorney (0011813) |
| David M. Ascher, Esq. | Philomena M. Dane (0044064) |
| Vice President, General Counsel | Aneca Lasley (0072366) |
| and Secretary | SQUIRE, SANDERS & DEMPSEY L.L.P. |
| The Newark Group, Inc. | 1300 Huntington Center |
| 20 Jackson Drive | 41 South High Street |
| Cranford, New Jersey 07016 | Columbus, Ohio 43215-6197 |
| (908) 276-4000, ext. 288 | (614) 365-2700 |
| (908) 276-2888 (facsimile) | (614) 365-2499 (facsimile) |

Attorneys for Plaintiff
The Newark Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on this ___ day of September, 2003, upon the following:

**VIA HAND DELIVERY:**

Scott E. North
James D. Curphey
Julie  L. Atchison
Bryan R. Faller
PORTER WRIGHT MORRIS & ARTHUR
41 South High Street
Columbus, Ohio  43215

Attorneys for Defendant Sonoco-U.S. Mills, Inc

**VIA REGULAR UNITED STATES MAIL:**

Eric A. Szweda, Esq.
Troutman, Sanders, LLP
600 Peachtree Street, N.W.
Suite 5200
Atlanta, GA  30308

Attorneys for Defendant Georgia-Pacific


           s/ John R. Gall
           One of Attorneys for Plaintiff